GRACEN *v.* MAYOR AND ALDERMEN OF SAVANNAH *et al.*

FISH, C. J. 1. From the record and bill of exceptions the exact course of procedure in the court below is not clear. The bill of exceptions recites that the solicitor-general of the Eastern Circuit filed a petition against the Mayor and Aldermen of the City of Savannah for the validation of $200,000 of bonds, and a rule nisi was issued thereon; that the plaintiff in error, alleging himself to be a citizen of the city and a resident of the county and municipality, filed objections to the validation of the bonds, and was duly made a party in the proceedings; that at the hearing of the proceedings the municipal corporation filed its answer to the petition and its demurrer to the objections of the citizen; that, "after argument on the hearing of the said demurrer," the judge rendered his opinion "overruling all of the objections;" and that thereafter a judg-

ment was duly entered confirming and validating the bonds. Error is assigned on the overruling of the objections of the plaintiff in error and on entering a judgment validating the bonds. The record contains an opinion filed by the presiding judge, which begins with the recital: "After due formalities, the question before me is whether, in view of the objections made by the intervenor, an issue of bonds by the respondent shall be validated." The objections are then grouped and discussed. The opinion closes thus: "All of the objections are therefore overruled, and an order will be taken validating the issue of bonds." The opinion was dated November 1, 1913. A judgment of validation was taken, dated November 3, which opens with the following recital: "The above cause coming on regularly for trial at the time as set in the order and advertised to the public, and it appearing to the satisfaction of the court that notice of hearing has been duly published as required by law, and the Mayor and Aldermen of the City of Savannah having made answer thereto, and upon consideration of the proofs submitted in support of the allegations of the petition and answer, and it appearing that certain objections have [been] filed, which have been overruled by the court, as will more fully appear by reference to the opinion of the court rendered on the first day of November, 1913: Therefore, upon considering the questions of law and fact in said cause," etc. It does not appear, therefore, whether the objections were stricken on demurrer as being insufficient on their face, or whether they were heard in connection with the entire case on law and facts, and were dealt with in the light of the petition of the solicitor-general and answer of the city and whatever evidence was introduced, though none is set out in the bill of exceptions. Under such facts and recitals this court will deal with the points made in the light of the entire record, rather than as being confined to the case as one strictly of sustaining a demurrer to the allegations of the objector.

2. An election held by a municipal corporation for the purpose of determining whether bonds should be issued for the purchase of a site and the erection of a public auditorium thereon was not void on the ground that this constituted two distinct and separate purposes which could not be submitted at one election and to be voted on in one ballot. A site for an auditorium is inseparably connected with the auditorium itself, and an auditorium can not be erected without a site.

3. An allegation that the municipal authorities do not contemplate or intend to use the proceeds of any of the bonds for the purchase of a site, but contemplate and intend to use the proceeds thereof, or so much as may be necessary, for the erection of an auditorium on a site already owned by them, does not furnish ground for a refusal to validate bonds which have been authorized by an election for the purpose of selecting a site and erecting an auditorium. If the public authorities should seek to use in an unlawful manner, or for an unlawful purpose, the proceeds of the bonds thus authorized, the remedy is not by a refusal to validate the bonds for the purpose for which they were authorized.

4. Under the ruling in *Gavin* v. *City of Atlanta*, 86 *Ga.* 132 (12 S. E. 262), and the cases following. it (*Floyd County* v. *State*, 112 *Ga.* 794 (38 S. E. 37); *McKnight* v. *Senoia*, 115 *Ga.* 916 (42 S. E. 256); *Wilkins* v. *Waynesboro*, 116 *Ga.* 359 (42 S. E. 767); *Farmer* v. *Thomson*, 133 *Ga.*

94, 101 (65 S. E. 180)), where the legislature has provided for the registration of voters in a municipality, the number of voters registered thereunder is the test for ascertaining whether the requisite two-thirds majority of the qualified voters of such municipality has been obtained at an election for which such registration was provided, and at which the assent of such majority was requisite to empower the municipality to incur an indebtedness under the constitution of 1877. Where such provision has been made by the legislature as to the registration of voters in a municipality who are qualified to vote at such election, such registration will be considered, rather than the general rule provided by the Civil Code (1910), § 443, in the absence of such a registration law as to the municipality.

(a) Under the rulings above cited, the act of 1910 (Acts 1910, p. 1144), providing for the registration of voters in the City of Savannah prior to any election touching the issuance of municipal bonds, is not unconstitutional as being violative of the clause of the constitution of this State prohibiting special legislation in cases for which provision has already been made by the general law Art. 1, sec. 4, par. 1 (Civil Code (1910), § 6391).

5. One of the objections of the plaintiff in error alleged that the voters' book provided for by the act of 1910 was not kept open for the signature of voters by the treasurer of the City of Savannah or a deputized registrar appointed by him from among the employees of his office, as by the act provided, but was kept open by a person or persons appointed by the mayor of the City of Savannah pursuant to a resolution of the mayor and aldermen adopted on a named date, and that said registration was therefore void. One ground of demurrer raised the point that the resolution was not set out so that it could be determined whether its terms were violative of the act to the extent of constituting an entirely different registration from that contemplated by the act, or whether at most there was a mere irregularity in the manner in which the act was carried into effect. If this objection be considered simply in the light of the demurrer, the objection is insufficient, and was subject to be stricken.

(a) If the answer of the city be considered in connection with this ground of objection, it appears from a copy of the resolution of the mayor and aldermen, thereto attached, that it recited that the then existing office force of the city treasurer was not adequate to complete the registration before the election, and authorized the mayor to appoint two employees in the treasurer's office of Savannah for the purpose of doing and completing the work. The answer of the city alleged that these two employees in the city treasurer's office were deputized by the city treasurer in charge of the registration. If such be taken to be the facts, this did not render the registration void, so as to amount to no registration and leave the city without any registration for the bond election.

6. A general allegation that the voters' book was not kept open in the office of the treasurer in the city hall of Savannah from 9 o'clock a. m. to 4 p. m. each day, Sunday excepted, as required by the aforesaid act, but not showing whether the variance was material or trivial, or that it had any probable effect upon the registration or the election, was not sufficient as an objection to prevent the validation of the bonds after the election.

7. The objection that the list of registered voters provided for by the act was not made by and filed with the clerk of the City of Savannah by the treasurer, as required by the act, but by the marshal of the city and one of the persons appointed by the mayor to keep open the voters' book, was properly overruled. It did not show that the list filed with the clerk was not a correct list of registered voters as made up in the treasurer's office by himself or those acting under him, or that the acting assistant of the treasurer was not authorized by him,—that the physical act of filing the list with the clerk by another than the treasurer in person constituted more than a mere irregularity which did not affect the validity of the election. If the answer of the mayor and council be considered and the facts alleged therein be treated as established, it has attached to it a copy of the certificate by the treasurer and the deputy registrar, addressed to the clerk of the council, referring to the list as previously furnished, and certifying that a specified number of persons were not qualified to vote because of non-payment of taxes, thus treating the list as having been furnished by the treasurer.

8. Two grounds of objection were to the effect, that the two persons referred to in the next preceding headnote filed with the clerk a list which contained the names of the registered voters, but also distinguished certain of them as disqualified because of the alleged non-payment of taxes due the city; that certain of these names were stricken from the list; that the whole number signing the book was 1681, of which number two thirds would be 1121; and that 1105 affirmative votes were cast for the issuance of the bonds which was less than two thirds of the whole number. It did not appear that any of the names of the qualified voters who were authorized to vote were stricken from the list. If the verified answer of the city and the exhibits thereto be considered, either as having been introduced in evidence or as having been sustained by aliunde evidence, it alleged that the total number of qualified voters was 1538, as shown by the certificate of the treasurer and deputy registrar; and that 1177 votes were cast, of which 1105 were in favor of the issuing of bonds and 72 against it, as was shown by the election returns signed by the managers. Attached to the answer were exhibits of copies of the returns and the certificates of the treasurer and deputy registrar mentioned in the previous headnote, which showed that 133 votes and names appearing on the original list, were disqualified because of non-payment of taxes for the year preceding that in which the election was held, and that the list as purged of such names contained 1538 registered voters.

9. Considering the record as a whole, there was no error in overruling the objections filed by the plaintiff in error to the validation of the bonds. If there were any irregularities, they were not shown to be such as to render the entire registration and election void or to have affected the result thereof.          *Judgment affirmed. All the Justices concur.*
JULY 17, 1914.

Validation of municipal bonds. Before Judge Charlton. Chatham superior court. November 3, 1913.

*George H. Richter,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general, John Rourke Jr.,* and *David S. Atkinson,* contra.