## RICHTER *v.* CHATHAM COUNTY *et al.*

1. A county may issue bonds to be paid for with funds derived from public taxation, and procure a judgment of the court confirming and validating the same, only when the constitution and laws of the State have been fully complied with.
2. The act of the legislature approved August 11, 1915, authorizing the county officers of Chatham County to establish a system of registration for that county, which system alone was considered by the court in arriving at the number of qualified voters, is unconstitutional, because it is a delegation of legislative authority.
3. Where there is no legal evidence from which a court can determine whether two thirds of the qualified voters have given their assent to the incurring of a debt for which it is proposed to issue bonds, a judgment confirming and validating such proposed bonds is unauthorized.

NOVEMBER 18, 1916.

Validation of county bonds. Before Judge Charlton. Chatham superior court. January 15, 1916.

On October 2, 1915, a petition was filed in the superior court by the solicitor-general, representing the State under the act of 1907 (Acts 1907, p. 82), for the purpose of validating certain bonds of the County of Chatham, voted upon in an election held on September 21, 1915. On October 6, 1915, George H. Richter, a citizen of Chatham County, became a party to the proceeding, and demurred to the petition. On October 15, 1915, Chatham County filed its answer to the petition. Subject to the demurrer, Richter filed his answer to the answer of Chatham County, denying the allegations therein contained, and objecting specifically to the validation of $400,000 of bonds for school purposes. He also filed an amendment in which he specifically objected to the validation of $50,000 of bonds for a reformatory building. Thereafter he de-

murred to a part of the answer of Chatham County, and further demurred to paragraphs 2, 3, and 4 of the petition of the State. The presiding judge overruled these demurrers. Richter then filed an answer denying paragraphs 2, 3, and 4 of the petition of the State. Chatham County, over objection, amended its answer. On January 15, 1916, an order was entered validating the entire issue of bonds. To this order, and to the rulings on the demurrers, Richter excepted.

*George H. Richter*, for plaintiff in error.

*Walter C. Hartridge, solicitor-general, George T. Cann*, and *William B. Stephens*, contra.

GILBERT, J. (After stating the foregoing facts.)

1. A county may issue bonds to be paid for with funds derived from public taxation, and procure a judgment of the court confirming and validating the same, only when the constitution and laws of the State have been fully complied with. One requirement, among others, is that bonds of this character may issue only when two thirds of the qualified voters have given their assent to incurring the debt. Park's Code, § 6563. This assent must be expressed in an election held for that purpose under the rules provided by the General Assembly. Park's Code, § 441. "In determining the question whether or not two thirds of the qualified voters . . voted in favor of the issuance of said bonds, the tally-sheets of the last general election held in said county . . shall be taken as a correct enumeration of the qualified voters thereof." Civil Code (1910), § 443.

Where legislative provision has been made as to the registration of voters in such a bond election, and where such provision is applicable in a particular county, such registration will be considered rather than the general rule provided by the Civil Code (1910), § 443. *Gracen v. Savannah*, 142 *Ga.* 141, 143 (82 S. E. 453). It is insisted by the defendant in error that such provision has been made, and that the same is applicable in the County of Chatham (Acts 1915, p. 54). The first section of this act provides, "that the county officers having charge of the levying of taxes for any county having a city therein which now has or which may hereafter have a population of not less than 60,000, nor more than 150,000, may establish a system of registration whereby the electors of said county qualified to vote for members of the General

Assembly may be registered in order· to ascertain those voters entitled to vote at any election held to determine whether such county shall incur any new debt." The second section provides that the system of registration which it undertakes to authorize, when established, "shall control as to who are those entitled to vote at any such election." Numerous assaults are made upon the validity of this statute. It is insisted by the plaintiff in error that this act is unconstitutional, among other reasons, because it is a delegation of legislative authority to county officers. In *Wayman v. Southard,* 10 Wheat. 1, 43 (6 L. ed. 253), Chief Justice Marshall said: "The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions, to fill up the details." The defendant in error insists that the act in question does not constitute such a delegation of legislative authority as to bring it in conflict with the constitution; and cites as authority for this contention the cases of *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665), and *Early County* v. *Baker County,* 137 *Ga.* 126 (72 S. E. 905). The ·courts have expended much time and thought upon this subject, but the principle has nowhere been stated more clearly than by Mr. Justice Crawford in the case of *Georgia Railroad* v. *Smith,* 70 *Ga.* 694, in the following language: "The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed is apparent and strikingly great; and this we understand to be the distinction recognized by all of the courts as the true rule in determining whether or not in such cases a legislative power is granted. The former would be unconstitutional, whilst the latter would not." This language is· quoted approvingly in *Southern Railway Co.* v. *Melton,* supra, by Mr. Justice Lumpkin, where an elaborate and instructive discussion of this whole subject will be found. The General Assembly in the act in question made no effort to legislate anything in regard to the system of registration proposed for Chatham County. It simply authorized the county officers to establish a system of registration. This was a grant of legislative authority, and is repugnant to the constitution (art. 3, sec. 1, par. 1), which vests the legislative power of the State in the General Assembly. Civil Code (1910), § 6410.

The local system of registration being invalid, and it not appearing that the court had before it the tally-sheets of the last general election held in said county, or any other legal evidence of the number of registered voters, the judgment validating the bonds was unauthorized.

*Judgment reversed. All the Justices concur, except Atkinson, J., dissenting.*